UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN STOWERS,<br><br>        Plaintiff,<br><br>    v.<br><br>HRABKO,[1]<br><br>        Defendant. | No. 2:18-cv-2177 DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Before the court is defendant's motion for summary judgment and plaintiff's motion to compel discovery responses. For the reasons set forth below, this court will recommend defendant's motion be granted and will deny plaintiff's motion.

**BACKGROUND**

This case is proceeding on plaintiff's original complaint, filed here on August 9, 2018. Plaintiff alleged that beginning in 2014, defendant Hrabko, a dermatologist, failed to properly treat plaintiff's lip disease when plaintiff was incarcerated at California State Prison, Solano

---

[1] Defendant points out that his name was misspelled as "Harbako" in plaintiff's complaint. The Clerk of the Court is directed to reflect the correct spelling of defendant's name on the docket.

("CSP-SOL"). (ECF No. 1.) On screening, this court found plaintiff stated a cognizable Eighth Amendment claim against Hrabko. (ECF No. 7.) On September 3, 2019, defendant filed an answer (ECF No. 27) and on December 2, 2019 filed the present motion for summary judgment (ECF No. 29). In his motion, defendant argues this action should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this suit.

The court granted plaintiff's motion for an extension of the discovery deadline and of the deadline for filing an opposition to defendant's motion. (ECF No. 31.) In March, defendant moved for a stay of discovery pending the court's decision on the summary judgment motion. This court granted that request but permitted plaintiff the opportunity to move to compel any discovery responses relevant to the exhaustion issued raised in defendant's motion for summary judgment. (ECF Nos. 42, 44.)

Plaintiff has now filed an opposition to the motion for summary judgment (ECF No. 45) and defendant filed a reply (ECF No. 46). In his opposition, plaintiff moves to compel defendant to respond to discovery that plaintiff contends is relevant to the pending summary judgment motion.[2]

## MOTION FOR SUMMARY JUDGMENT

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record,

---

[2] Plaintiff requested several extensions of time to file a formal motion to compel discovery. The court has granted plaintiff's requests and warned plaintiff that any motion to compel must be limited to discovery requests relevant to the issues raised in defendant's summary judgment motion. After being given several months to file such a motion, plaintiff has not done so. Because plaintiff included a motion to compel with his opposition to the summary judgment motion and has given the court no reason to think he has any new grounds to seek to compel, this court will consider the motion to compel incorporated with plaintiff's opposition.

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff

1  members . . . made statements from which a jury could reasonably infer a retaliatory motive");
2  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d
3  407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because
4  it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury
5  pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would
6  an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that
7  the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
8  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury
9  could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S.
10 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

////

**II. Legal Standards for Exhaustion of Administrative Remedies**

    **A. PLRA Exhaustion Requirement**

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

The Supreme Court has identified three situations in which administrative remedies are "unavailable" within the meaning of the statute. First, an "administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (citing Booth, 532 U.S. at 736, 738). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 1859. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the administrative remedy is effectively unavailable. Id. at 1860 (citing Woodford, 548 U.S. at 102). "[T]he ultimate burden of proof," however, never leaves the defendant. Albino, 747 F.3d at 1172.

**B. California's Inmate Appeal Process**

California regulations distinguish prisoners' health care appeals from other types of grievances. Health care appeals are governed by Title 15 of the California Code of Regulations, Article 5, § 3999.225, et seq. The health care grievance process provides an administrative

remedy "for review of complaints of applied health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on [prisoners'] health or welfare." Cal. Code Regs. tit. 15, § 3999.226(a).

The regulations provide for two levels of review for a health care appeal. First, an inmate who files a health care grievance will receive review at the institutional level. Cal. Code Regs. tit. 15, § 3999.226(a)(1). In submitting a grievance, an inmate is required to "document clearly and coherently all information known and available to him or her regarding the issue" and identify the staff member involved. Id. § 3999.227(g). The appeal should not involve multiple issues that do not derive from a single event. Id. § 3999.227(e). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the action or decision being appealed or from "[i]nitial knowledge of the action or decision being grieved." Id. § 3999.227(b).

If a prisoner is "dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition by completing and signing Section B of the CDCR 602 HC and submitting the health care grievance package [for headquarters' level review] to HCCAB." Cal. Code Regs. tit. 15, § 3999.229(a). "The headquarters' level review constitutes the final disposition on a health care grievance and exhausts administrative remedies." Id. § 3999.230(h). The exhaustion requirement is echoed in another section: "Health care grievances are subject to a headquarters' level disposition before administrative remedies are deemed exhausted pursuant to section 3999.230. A health care grievance or health care grievance appeal rejection or withdrawal does not exhaust administrative remedies." Id. § 3999.226(g).

**III. Undisputed Material Facts re Exhaustion**

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 29-3.) Plaintiff's filings include: (1) points and authorities (ECF No. 45 at 3-9); (2) declarations (id. at 10-19); (3) a response to the DSUF (id. at 20-26); and (4) a statement of disputed facts (id. at 28-36). In addition to these documents, and in light of plaintiff's pro se status, the court has also reviewed statements made in plaintiff's verified complaint and of which he has personal knowledge. The following are the material facts which are undisputed:

////

7

- Plaintiff submitted two health care appeals between December 2013 and December 2019: SOL HC 13038729 and CMC HC 18000469.
- Plaintiff submitted SOL HC 13038729 on December 6, 2018 to the first level of review. He withdrew that appeal on January 14, 2019.
- Plaintiff submitted CMC HC 18000469 to the first level of review on January 9, 2018. Plaintiff re-submitted it twice. (See Plt's Decl. (ECF No. 45 at 11); S. Gates Decl. (ECF No. 29-4 at 3).) The version considered at the institutional level was the third version, submitted on March 20, 2018.
- In the appeal submitted March 20, 2018, plaintiff described the history of his lip problems, starting in 2005. With respect to the defendant in this case, plaintiff stated, "[i]n 2015 I was seen by Dr. Hrabko, a Dermatologist[.] [H]e diagnosed me with Actinic Cheilitis. [H]e didn't treat it." Plaintiff concluded his appeal by stating that he was "objecting" to the lack of treatment from Hrabko. (ECF No. 29-4 at 22-23.)
- On March 27, 2018, a first level response was issued to plaintiff.[3] In that response, plaintiff's appeal was characterized as seeking a regular prescription for lip medication he had been provided previously. (ECF No. 29-4 at 17.)
- The first level response stated that plaintiff's request was being denied and that any further medication must be prescribed by his doctor. (ECF No. 29-4 at 17-19.) Plaintiff was advised to submit a health care services request form if he had any new symptoms. Plaintiff was also told, "If you are dissatisfied with the Institutional Level Response submit the entire health care grievance package for Headquarters' Level Review." (Id. at 19.)

---

[3] Plaintiff states that this response was completed in February 2018. He references the signature page, which is dated February 28, 2018. (See ECF No. 29-4 at 17-19.) That date appears to simply be an error – the response refers to the institution's receipt of the grievance on March 20, 2018. Therefore, the February 28 date makes no sense. Because the response is dated March 27, 2018 on the first page, this court accepts that date as the correct one. In any event, whether it was February or March is not material to this court's consideration of the exhaustion issues raised herein.

8

1       • Plaintiff did not submit his grievance for review at the Headquarters Level.

**IV. Analysis of Exhaustion**

Before he filed a § 1983 action here, plaintiff must have fully exhausted his appeals by submitting them to the highest level of administrative review and receiving a denial at that level. It is not disputed that plaintiff did not do so. Therefore, defendants have satisfied their initial burden of showing plaintiff failed to exhaust his administrative remedies. See Albino, 747 F.3d at 1171-72. The burden then shifts to plaintiff to show administrative remedies were unavailable to him. Id. at 1172.

**A. Legal Standards to Excuse Exhaustion Requirement**

The Supreme Court has stressed that "all inmates must now exhaust all available remedies," and district courts must apply this statutory requirement. Ross, 136 S. Ct. at 1858. Thus, there is no "special circumstances" exception to the PLRA's rule of exhaustion. Id. That said, the PLRA does provide one textual exception by its use of the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Id. (quoting Booth, 532 U.S. at 737-38.)

In Ross, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1858-59. These circumstances are: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59). However, "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted). The Ninth Circuit characterized the list in Ross as "non-exhaustive." Andres, 867 F.3d at 1078. Various other circumstances may render administrative remedies unavailable, including the failure of prison officials to properly process a prisoner's grievance. Id. at 1079.

**B**. **Are there Disputes of Material Fact re Whether Administrative Remedies were Available to Plaintiff?**

### 1. Reasonable but Mistaken Belief he had Exhausted

Plaintiff first contends that he understood that he had exhausted his administrative remedies when he told a nurse conducting an interview for his health care grievance that, "I am exhausting all my state remedies." (ECF No. 45 at 5.) In his declaration, plaintiff describes his statement somewhat differently. He declares that he told the nurse he "wanted to exhaust [his] administrative remedies so that [he] could file a lawsuit against Dr. Hrabko." (Id. at 12.)

A reasonable but mistaken belief is not, as plaintiff contends, an exception to the exhaustion requirement. The Supreme Court in Ross specifically held that a reasonable misunderstanding of the prison's grievance procedure does not render the process "unavailable" for exhaustion purposes. 136 S. Ct. at 1858. Nor is plaintiff's lack of legal knowledge that he was required to exhaust through all levels of administrative review before filing suit in federal court an exception. See Gurley v. Clark, 620 F. App'x 671, 673 (10th Cir. 2015) ("Lack of knowledge of the exhaustion requirement does not excuse an inmate's failure to exhaust administrative procedures.").

### 2. Lack of Explicit Notice of Exhaustion Requirement

Plaintiff next argues that the institutional level response did not "explicitly" provide notice that he "MUST submit his grievance/appeal to Headquarters Level Review to exhaust his Administrative Remedies." (ECF No. 45 at 5.) The institutional level response plaintiff received stated: "If you are dissatisfied with the Institutional Level Response submit the entire health care grievance package for Headquarters Level Review." (Ex. D to Decl. of S. Gates (ECF No. 29-4 at 19).)

Plaintiff cites no authority for the proposition that an institutional level response must specifically inform plaintiff of the legal prerequisites for filing a suit in court. Rather, as set out in Ross, to be considered available, the "procedures need not be sufficiently 'plain' as to preclude any reasonable mistake," as long as an "ordinary prisoner can make sense of what it demands." Muhammad v. Mayfield, 933 F.3d 993, 1001 (8th Cir. 2019) (quoting Ross, 136 S. Ct. at 1859).

Here, the institutional level response clearly instructed plaintiff to submit his appeal to the headquarters level if he was dissatisfied. As stated above, the fact that plaintiff was unaware he was legally required to do so to exhaust his administrative remedies prior to filing suit is not an excuse to the exhaustion requirement. See Gurley, 620 F. App'x at 673.

Further, there is no competent evidence that the legal standards for administrative appeals and regarding the exhaustion requirement were not available to plaintiff. Plaintiff states in his opposition brief that the prison law library did not include copies of the California Code of Regulations ("CCR"). (See ECF No. 45 at 12.) Plaintiff cites to his own declaration and to the declaration of inmate Keith Chambers in support of that statement. Neither document supports his assertion. Plaintiff does not state in his declaration that the CCR was unavailable to him or was not available in the library. (See ECF No. 45 at 10-16.) Nor does Mr. Chambers make any such statement in his declaration. (See ECF No. 45 at 17-20.) Moreover, plaintiff's assertion that the library did not contain the CCR is belied by the evidence. Plaintiff cited to a CCR section in his response to the rejection of one of his prison grievances in February 2018. (See ECF No. 29-4 at 25.)

In response to plaintiff's interrogatory, defendant stated that copies of the CCR for the relevant time period were available in the prison law library. (See ECF No. 46 at 9.) Plaintiff presents no credible evidence to the contrary. The regulations state that health care grievances must be submitted to a headquarters' disposition, or third level of review, before administrative remedies are deemed exhausted. Cal. Code Regs. tit. 15 §§ 3999.226(g); 3999.230(h). The PLRA requires exhaustion prior to filing suit. 42 U.S.C. § 1997e(a). Plaintiff fails to present evidence to create an issue of fact regarding whether prison grievance procedures were so "opaque" that he could not reasonably have exhausted them.

### 3. Prison Thwarted Plaintiff's Attempts to Exhaust

Plaintiff also argues that the prison thwarted his attempts to exhaust by failing to process his grievance as a staff complaint, by "misrepresenting" the relief plaintiff sought, and by telling plaintiff that if he had further concerns, he should file a health care services request form. Even

////

assuming the truth of plaintiff's assertions, none of these facts demonstrate an attempt by prison officials to "thwart" plaintiff's appeal rights.

First, plaintiff submitted his appeal on the form "CDCR 602 HC" for a "Health Care Grievance." (See ECF No. 29-4 at 21.) Whether or not it was, technically, a staff complaint does not bear any relevance to plaintiff's failure to exhaust. In fact, it shows that plaintiff had even more reason to have submitted his grievance to the headquarters' level since he was dissatisfied with the result of the institutional decision.

The same is true for plaintiff's contention that reviewers misconstrued the relief he sought and instructed him to file a health care services request form. This court first notes that plaintiff's description of the institutional level response does not reflect it fully. While plaintiff was instructed to file a health care services request form, he was only told to do so "[i]f you have additional health care needs." (ECF No. 29-4 at 19.) The response also informed plaintiff that he would not be prescribed medication that he did not currently require. (Id.) To the extent plaintiff was seeking to complain of Dr. Hrabko's conduct, rather than seeking to obtain medication, and he was dissatisfied with the institutional level response, that response made very clear that his next step was submitting his grievance to the headquarters' level. (Id.) Even if the response incorrectly framed plaintiff's complaint, it did not prevent him or mislead him in any way about his right to appeal to the next level of review. Moreover, the law is clear that a prisoner must exhaust his administrative remedies even if the relief sought by the prisoner is not available in the administrative process. Booth, 532 U.S. at 741.

Finally, plaintiff states that he was forced to resubmit his appeal twice before it was considered. To the extent plaintiff is alleging this was another aspect of prison officials' attempts to interfere with his right to appeal, again, plaintiff fails to make that showing. There is no dispute that plaintiff's third filing was accepted and considered at the institutional level and that he could have, but did not, submit it for headquarters' level review.

Plaintiff fails to demonstrate that prison officials engaged in any sort of "machination, misrepresentation, or intimidation" that rendered his administrative remedies unavailable. See Andres, 867 F.3d at 1078. The circumstances here bear no resemblance to those found by courts

to meet this standard. Prison officials in the present case did not unreasonably delay consideration of plaintiff's grievance, id. at 1078-79; they did not threaten plaintiff with harm if he sought to pursue his appeal rights, Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); and they did not mislead plaintiff "so as to prevent [his] use of otherwise proper procedures," Hardy v. Shaikh, 959 F.3d 578, 586 (3rd Cir. 2020).

### 4. Exhaustion is Futile Because Relief is Never Granted

Plaintiff's final argument is that exhaustion would have been futile because headquarters' level review is a dead end. Plaintiff cites to the declaration of inmate Keith Chambers to support his argument that inmates rarely, if ever, receive relief at the headquarters' level of review. Mr. Chambers states that he has worked as a clerk in the law libraries of various prisons for about six years. Chambers then states that over a twenty-year period he has "had the opportunity to view hundreds, if not thousands, of health-related and staff grievances" filed by inmates. He asserts that it "has been [his] experience" that grievances submitted to the headquarters' level review are simply allowed to expire without a decision and the institutional-level decision is the final decision in the grievance process. He adds that in "nearly all cases" that he is "aware of," headquarters' level review is a dead end because it provides inmates no relief. (ECF No. 45 at 18-19.)

This court does not find Chambers' personal experience sufficient to carry plaintiff's burden of showing his administrative remedies were effectively unavailable. Initially, this court notes that several aspects of Chambers' declaration lack clarity. Chambers does not explain how or why he has twenty years of experience reviewing inmate grievances when he has been a library clerk for only six. Nor does he explain how his experience with viewing so many inmate grievances demonstrates that he also has experience viewing the responses inmates received from the final level of review. Even assuming the truth of Chambers' assertions and their implications – that he has reviewed "hundreds" or even "thousands" of final-level responses to inmate grievances – plaintiff fails to show how Chambers' personal experience is a representative sample of all final-level responses. This court finds plaintiff's evidence that headquarters' level review is a dead end insufficient to carry his burden of establishing the unavailability of his administrative

13

remedies. See Bruister v. Asuncion, No. CV 17-05106-PSG-RAO, 2019 WL 1744215, at *7 (C.D. Cal. Mar. 6, 2019) (personal experience of jailhouse lawyer that administrative relief never granted found insufficient to support prisoner's claim that administrative remedies unavailable under Ross), rep. and reco. adopted, 2019 WL 6655388 (C.D. Cal. Sept. 10, 2019).

To conclude, plaintiff fails to demonstrate a material issue of fact regarding an excuse to the exhaustion requirement. The undisputed material facts show plaintiff failed to exhaust his administrative remedies through the highest level of review before filing this suit as required by 42 U.S.C. § 1997e(a). Accordingly, defendant's motion for summary judgment should be granted.

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

In the order granting defendant's motion for a stay of discovery, this court advised plaintiff that if he had "outstanding discovery issues that relate to the subject of defendant's motion for summary judgment, the exhaustion of his administrative remedies, he should so notify the court." (ECF No. 42 at 2 n.1.) After the court issued its order granting the stay, plaintiff's opposition to a stay was filed. Therein, plaintiff contended that defendant failed to fully respond to this discovery requests and that he required full responses before he could file an opposition to the summary judgment motion. (ECF No. 43.) After noting that plaintiff had failed to show just why the discovery sought was relevant to defendant's summary judgment motion, in an order filed May 18, the court gave plaintiff thirty days to file a motion to compel. (ECF No. 44.)

In his opposition to the summary judgment motion, plaintiff includes argument that he requires defendant's responses to his discovery in order to fully oppose the motion. Plaintiff attaches copies of defendant's responses to his Request for Admissions and Request for Production of Documents. (ECF No. 45 at 65-85.) Plaintiff requested several admissions from defendant regarding the issue of exhaustion. However, any further response by defendant to those requests would not affect this court's consideration of defendant's motion for summary judgment.

Plaintiff sought admissions that there are certain circumstances in which a prisoner is not required to fully exhaust. (Requests ## 13, 16 (ECF No. 45 at 71, 73).) Defendant objected to

this request on the grounds, among others, that it sought a legal opinion. This court agrees that such a request is not appropriate. Defendant is a doctor who is not qualified to render a legal opinion. Moreover, a party may not request an admission of a legal conclusion. Fed. R. Civ. P. 36(a)(1) (limiting subjects upon which admissions may be sought); In re Tobkin, 578 F. App'x 962, 964 (11th Cir. 2014). Any response by defendant to these requests would not affect this court's consideration of the legal exceptions to the exhaustion requirement.

Plaintiff next asked for an admission that "the suggestion that Mr. Stowers should seek further review on his Health Care Appeal (HC-602) concerned an anticipated action and not the issue of deliberate indifference by Dr. Hrabko." (Request # 14 (ECF No. 45 at 72).) Defendant objected to this request on numerous grounds, including that it is ambiguous and calls for speculation. This court agrees that it is not clear what plaintiff was seeking with this request. Plaintiff does not explain further in his briefing. As best this court can discern, plaintiff was attempting to obtain an admission that further appealing his health care appeal would have been futile. Again, regardless of defendant's response to this request, it would not affect this court's consideration of the issues involved in plaintiff's argument that he should be excused from the exhaustion requirement.

Finally, plaintiff requested an admission that six California cases each demonstrate a circumstance in which a prisoner is not required to exhaust his administrative remedies. (Request # 15 (ECF No. 45 at 72).) Defendant again objected that the request sought a legal opinion. This court again agrees. Plaintiff may not seek a legal conclusion by way of requests for admissions.

Plaintiff made just one request for production of documents that this court finds appropriate and related to the exhaustion issue. In Request #17, plaintiff asked for copies of any documents demonstrating that plaintiff was required to exhaust his administrative remedies. (ECF No. 45 at 84.) Defendant objected on numerous grounds, including that plaintiff was asking defendant to do his legal research. Defendant then directed plaintiff to the California Code of Regulations ("CCR") and Department Operations Manual ("DOM") and informed plaintiff that both could be found in the prison law library.

////

15

It is not clear just what plaintiff expects defendant to have done in response to this request. Plaintiff notes that neither the CCR nor the DOM are available in the law library. He further complains that neither publication states that prisoners must exhaust their administrative remedies before they file a lawsuit. As discussed above, that is not the case. The CCR sets out the requirements for exhaustion and plaintiff has provided no competent evidence that it was unavailable to him in the law library in 2018 when he submitted his grievance.

For these reasons, plaintiff's motion to compel will be denied. And, this court finds no reason to delay consideration of defendant's motion for summary judgment for the purpose of compelling defendant to more thoroughly respond to plaintiff's discovery requests.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel (ECF No. 45) is denied; and

2. The Clerk of the Court shall randomly assign a district judge to this case.

Further, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 29) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 14, 2020

DLB:9/DLB1/prisoner-civil rights/stow2177.msj fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

16